**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3482-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LISA POUSSON,

     Defendant-Appellant.

_____

Submitted January 5, 2021 – Decided March 12, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. 18-04.

LevowDWILaw, PC, attorney for appellant (Evan M. Levow, of counsel and on the brief; Christopher G. Hewitt, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Counsel, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

After a Law Division judge (the first Law Division judge) denied defendant Lisa Pousson's interlocutory appeal following the denial of her speedy-trial motion by the municipal court, another Law Division judge (the second Law Division judge) denied a subsequent appeal filed after she entered a conditional plea of guilty to driving while intoxicated (DWI), N.J.S.A. 39:4-50. Defendant appeals from the second Law Division judge's March 11, 2019 order arguing, as she did before the first Law Division judge, the charge should have been dismissed because her right to a speedy trial was violated. The State counters that, as the second Law Division judge ruled, an appeal from the first Law Division judge's order should have been filed with this court, not with the Law Division. The State contends defendant's present appeal is time-barred because she did not file within the twenty-day period, see Rule 2:5-6(a), following entry of the December 11, 2017 order—which became the law of the case.

We will reverse the denial of a speedy-trial motion only where it is "clearly erroneous," State v. Tsetsekas, 411 N.J. Super. 1, 10 (App. Div. 2009), but we review the Law Division judge's denial of defendant's motion to dismiss de novo because the challenged decision turns exclusively on a legal issue, see State v. Stas, 212 N.J. 37, 49 (2012). As such, we decline to address the State's

A-3482-18

procedural arguments because we determine defendant's speedy-trial right was not violated and affirm.

The four-part test to determine when a violation of a defendant's speedy-trial right contravenes due process—announced in Barker v. Wingo, 407 U.S. 514, 530-33 (1972) and subsequently adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976)—requires courts to "consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" Tsetsekas, 411 N.J. Super. at 8 (alteration in original) (quoting Barker, 407 U.S. at 530). "No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Id. at 10. Our Supreme Court has "decline[d] to adopt a rigid bright-line try-or-dismiss rule," instead continuing its commitment to a "case-by-case analysis," under the Barker balancing test; it has instructed "that facts of an individual case are the best indicators of whether a right to a speedy trial has been violated." State v. Cahill, 213 N.J. 253, 270-71 (2013). The parties do not dispute the timeline of this case, so we analyze those facts.

Defendant was arrested on July 18, 2016. She entered her conditional plea on April 12, 2018, 633 days after her arrest. The length of the delay—the first Barker factor—is beyond the sixty-day goal for disposal of DWI cases set by

Chief Justice Wilentz in a 1984 directive, later echoed in Municipal Court Bulletin letters from the Administrative Office of the Courts, designed to foster the judiciary's policy "committed to the quick and thorough resolution" of those cases. State v. Farrell, 320 N.J. Super. 425, 446-47 (App. Div. 1999); see also Tsetsekas, 411 N.J. Super. at 11. Although we have not suggested "any delay beyond the sixty-day goal is excessive," as "[t]here is no set length of time that fixes the point at which delay is excessive," Tsetsekas, 411 N.J. Super. at 11, the delay in both the commencement and final adjudication of this case was certainly inordinate, see id. at 11-12 (holding a delay of 344 days to be excessive); Farrell, 320 N.J. Super. at 428 (holding a delay between summons and trial completion of 663 days to be inexcusably extensive).

Barker's second prong "examines the length of a delay in light of the culpability of the parties." Tsetsekas, 411 N.J. Super. at 12. When reviewing "the chronology of the delay," courts should "divid[e] the time into discrete periods of delay" and attribute each delay to the State, the defendant or the judiciary. See State v. May, 362 N.J. Super. 572, 596, 600 (App. Div. 2003). Thereafter, "different weights should be assigned to different reasons" proffered to justify a delay. Barker, 407 U.S. at 531. Purposeful delay tactics weigh heavily against the State. Ibid.; see also Tsetsekas, 411 N.J. Super. at 12. "A

4

more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." Ibid. And, "[d]elay caused or requested by the defendant is not considered to weigh in favor of finding a speedy trial violation." Farrell, 320 N.J. Super. at 446.

Defendant waived her arraignment hearing in Jackson Township Municipal Court, scheduled for July 21, 2016, the day after defendant's counsel entered an appearance. Defendant's first appearance, scheduled for August 11, 2016, was adjourned at defendant's counsel's request.

The first appearance was rescheduled for September 1, 2016, but prior to that date the court sent a notice that a conflict involving defendant and the regular municipal court judge required the matter to be rescheduled before the "conflict judge" utilized by that municipal court. Apparently, the conflict judge kept to a limited calendar in covering the Jackson Township Municipal Court, and defendant's first appearance was rescheduled for December 8, 2016, the judge's next scheduled date. Defendant entered a plea of not guilty on that date and, after discussion of discovery issues, the judge, as per defendant's merits

5

brief, entered a <u>Holup</u> order.[1]  The matter was rescheduled—this time for trial—on February 23, 2017,[2] the conflict judge's next scheduled date in Jackson.

Defendant's counsel requested an adjournment of that date and, according to defendant's merits brief, was advised the matter would have to be relisted for a date that coincided with the conflict judge's availability.  That next scheduled date was July 20, 2017.

Defendant filed a motion to dismiss for lack of prosecution on the day before that date.  Following oral argument, the conflict judge denied the motion at the July 20 hearing.  Defendant filed an interlocutory appeal from that order on August 3, 2017 that was heard by the first Law Division judge on November 30, 2017 and denied on December 11, 2017.  After remand to the municipal court, defendant entered her conditional plea on April 12, 2018.

---

[1]  <u>State v. Holup</u>, 253 N.J. Super. 320 (App. Div. 1992).  A <u>Holup</u> order provides a mechanism to notice the State of defendant's discovery requests, and, practically, advises the State of defendant's reservation of the right to seek dismissal or suppression for non-compliance.  <u>See</u> <u>id.</u> at 324-26.

[2]  In his written opinion denying defendant's interlocutory appeal of the municipal court's denial of her speedy-trial motion, the first Law Division judge found this was set as a trial date.  In her merits brief, defendant contends trial notices were never "sent to the [d]efense."  The nature of that proceeding does not influence our decision.

Defendant contends the delays after any requested adjournments were inordinately long and should not have been attributed to her, adding that the case could have been transferred to another venue instead of remaining in Jackson where it was subject to the conflict judge's calendar. We have previously ruled that "the transfer of the matter between municipal courts and the unavoidable absence of [a] police witness"—even if a "significant part" of the delay—reasonably explains and justifies a lapse. State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983). Likewise, the court's limited calendar after a perceived conflict is a reasonable and justifiable reason for delay.

Significantly, defendant knew of the long gaps between the conflict judge's available dates when the matter was first adjourned at her counsel's request in February 2017, and the matter was not rescheduled until July 20. Yet she voiced no objection in the interim between the adjourned February date until July 19 when she filed the speedy-trial motion. Moreover, while she now argues the case should have been transferred to a different municipal court, she never before advanced that proposition.

Thus, the time lapses caused by both adjournment requests by defendant—from the August 11, 2016 and February 23, 2017 court dates—were properly attributed to defendant. Even if we were to consider the longer delay caused by

7

the conflict judge's availability—a delay recognized by our Supreme Court as typical, Cahill, 213 N.J. at 273—that would be a neutral reason and would "be weighted less heavily," Barker, 407 U.S. at 531. We also note that the municipal court proceedings were on hold from July 20, 2017, while defendant's interlocutory appeal was pending. And, importantly, the prosecution did not cause any delays in this matter. On balance, the reasons for the delay weigh against defendant.

In analyzing the third Barker factor, we recognize a defendant's assertion of the right to a speedy trial need not be "by way of formal motion." State v. Smith, 131 N.J. Super. 354, 363-64 (App. Div. 1974), aff'd, 70 N.J. 213 (1976). That analysis includes "the frequency and force of the [defendant's] objections" when assessing whether the defendant properly invoked the right. Barker, 407 U.S. at 529.

The first Law Division judge found defendant asserted her speedy-trial right in her initial discovery request of July 20, 2016. But, as we observed, she waited until the day before the July 2017 trial date to file a motion to dismiss. Although defendant did not have an obligation to bring herself to trial, see id. at 527; see also State v. Fulford, 349 N.J. Super. 183, 193 (App. Div. 2002), and it is the State's obligation to prosecute and do so in a manner consistent with

defendant's right to a speedy trial, see Barker, 407 U.S. at 527, defendant's failure to assert the right is a factor that must be considered in any analysis of her averred speedy-trial violation, see id. at 531-32. We recognize defendant's assertion of her rights, but weigh the delayed filing of her motion, for almost five months from late February to late July 2017, against her in our analysis.

In contrast to a due process claim, which a defendant must support with a showing of "actual prejudice, not possible or presumed prejudice," State v. Aguirre, 287 N.J. Super. 128, 133 (App. Div. 1996), "proof of actual trial prejudice is not 'a necessary condition precedent to the vindication of the speedy trial guarantee,'" Tsetsekas, 411 N.J. Super. at 13-14 (quoting State v. Merlino, 153 N.J. Super. 12, 15 (App. Div. 1977)). Although the delay may have caused a defendant

> no prejudice affecting [his] liberty interest or his ability to defend on the merits. . . . significant prejudice may also arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances.
>
> [Id. at 13 (citations and internal quotation marks omitted).]

9

Defendant argues she "lost employment opportunities, experienced financial strain, [and] suffered stress and anxiety in anticipation of a resolution" of this case. Even accepting those unspecific and unsupported assertions, we agree with the first Law Division judge's observation that defendant was not incarcerated during the pendency of the case and has alleged no impairment to any defense caused by the delays, the latter considered "the most serious since it [goes] to the question of fundamental fairness." Szima, 70 N.J. at 201. We further note defendant's driving privileges were never suspended, as stays of the imposed sentence were granted. The first Law Division judge concluded "the evidence of prejudice, if any, is slight, and therefore does not weigh heavily in [defendant's] favor." We agree.

"[I]n the administration of justice[,] dismissal must be a recourse of last resort." State v. Prickett, 240 N.J. Super. 139, 147 (App. Div. 1990); see also Farrell, 320 N.J. Super. at 447. Balancing the four Barker factors, we do not discern any error in the Law Division's denial of defendant's speedy-trial application. The delay in adjudicating this case was lengthy. But considering the reasons for the delays, the delays caused by defendant, the delay in her final assertion of rights and the lack of prejudice suffered by defendant, we conclude

10

there was no violation of defendant's constitutional speedy-trial right. Dismissal of this case was not warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3482-18